# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Case No. 1:18-cr-00270-RMM |
| | : | |
| MICHAEL COSTELLO HENSLEY, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

This case originated with a two-count information, filed September 4, 2018, in which the United States charged Defendant Michael Costello Hensley with misdemeanors for unlawfully entering and attempting to remain on the White House complex and grounds in violation of 18 U.S.C. § 1752(a)(1), and 22 D.C. Code § 3302(b).[1]  On March 5, 2020, the Court dismissed the charges against Mr. Hensley from the bench, concluding that his continued prosecution violated his Sixth Amendment speedy trial rights and that the delays resulting from the competency evaluation and restoration process also warranted a discretionary dismissal under Federal Rule of Criminal Procedure 48(b).  *See* March 5, 2020 Min. Entry.  This Memorandum Opinion provides the full rationale for that bench ruling and clarifies that Mr. Hensley's charges have been dismissed with prejudice.

Between the initiation of the case and the dismissal of the charges, Mr. Hensley spent approximately fifteen months detained in Bureau of Prisons ("BOP") facilities for the evaluation and restoration of his mental competency, a significant portion of which was spent awaiting an

---

[1] Mr. Hensley consented to proceed before a magistrate judge in the instant matter on February 13, 2020.  *See* Feb. 13, 2020 Min. Entry.

available bed space at and then being transported to those BOP facilities.  That period of detention exceeds the recommended Sentencing Guidelines sentence for Mr. Hensley (zero to six months) and approaches the maximum potential sentence for the charged offenses (which carry a maximum sentence of 18 months if served consecutively).  After considering the arguments raised at hearings and in the parties' briefs,[2] and for the reasons set forth below and stated on the record, the Court concludes that the delays warrant dismissal of the case against Mr. Hensley under both the Sixth Amendment of the Constitution and Federal Rule of Criminal Procedure 48(b).

## BACKGROUND

The Government filed a two-count information in this Court on September 4, 2018, charging Mr. Hensley with violating 18 U.S.C. § 1752(a)(1), and 22 D.C. Code § 3302(b).  *See* Information, ECF No. 1.  The Government alleged that Mr. Hensley unlawfully entered and attempted to remain on the White House complex and grounds when directed to stop by police and Secret Service officers.  *See* Information; Mem. in Supp. of Pretrial Detention ("Detention Mem.") at 2, ECF No. 5.  As a Class A misdemeanor, 18 U.S. Code Section 1752(a)(1), Entering or Remaining in Restricted Building or Grounds, carries a potential sentence of one year in prison and not more than a $100,000.00 fine.  *See* 18 U.S.C. § 1752(b)(1).  22 D.C. Code Section 3302(b), Unlawful Entry (Public Property), carries a potential sentence of six months in prison and not more than a $1,000.00 fine—comparable to a federal Class B misdemeanor.  *See* 22 D.C. Code §§ 3302(b), 3571.01(b)(4); 18 U.S.C. § 3559.  These misdemeanors carry a maximum

_____

[2] *See* Def. Mot. to Dismiss ("Def. Mot."), ECF No. 22; United States Opp'n to Def. Mot. to Dismiss ("United States Opp'n"), ECF No. 26; Def. Reply to United States' Opp'n ("Def. Reply"), ECF No. 25; Oct. 17, 2019 Min. Entry.

sentence of 18 months if they run consecutively.  However, the guidelines maximum for Mr.

Hensley is no more than six months.[3]

### A. <u>Initial Appearance</u>

Mr. Hensley first appeared in D.C. Superior Court on September 4, 2018 and was

released on his own recognizance.  He failed to appear in federal court that day, as instructed by

the Judge in his Superior Court proceedings, and a bench warrant was issued for his arrest.  *See*

Sept. 4, 2018 Min. Entry.  The following day, Mr. Hensley was arrested and appeared before this

Court for the first time.  *See* Sept. 5, 2018 Min. Entry.  He plead not guilty on both counts.  *Id.*

### B. <u>Initial Hearings Regarding Pretrial Detention and Competency Evaluation</u>

At Mr. Hensley's initial appearance, the United States orally moved that Mr. Hensley be

detained pending trial and requested a detention hearing pursuant to 18 U.S.C. § 1342(f)(2)(a).

*See id.*  The United States also moved that the Court immediately commit Mr. Hensley to the

custody of the Attorney General for a 30-day psychiatric evaluation pursuant to 18 U.S.C. §§

4241(b) and 4247(b), or, alternatively, that the Court order a "24-hour D.C. Superior Court

Forensic Screening."  *Id.*  Mr. Hensley's defense counsel orally opposed both motions and

asserted that the United States had not provided a sufficient reason to believe that Mr. Hensley

was incompetent to stand trial.  *See* Sept. 5, 2018 Min. Entry; Sept. 5, 2018 Hearing, 2:26:24–

2:27:22.  The Court denied the United States' request for a 30-day Commitment, *see* Sept. 5,

2018 Min. Entry, but ordered a preliminary screening "by the psychological or psychiatric staff

---

[3] At the October 17, 2019 motion hearing, both the United States and Mr. Hensley's defense counsel posited that Mr. Hensley's guidelines sentencing range would be zero to six (0–6) months detention.  The Court, having independently reviewed the guidelines, agrees.  *See* United States Sentencing Commission, Guidelines Manual, § 2B2.3 (Nov. 2018).

of the D.C. Department of Behavioral Health . . . [to assess] the defendant's competency" by September 14, 2018, *see* Order at 1, ECF No. 4.

The parties appeared on September 10, 2018 for a pretrial detention hearing although the forensic screening report had not yet been filed. *See* Sept. 10, 2018 Min. Entry. The United States filed a memorandum in support of pretrial detention and orally moved for pretrial detention. After hearing arguments from the parties, the Court continued the pretrial detention hearing to allow time to review information submitted by the parties. *See* Sept. 10, 2018 Min. Entry. The Court held Mr. Hensley without bond pending the completion of the detention hearing. *See id.*

The D.C. Department of Behavioral Health ("DCDBH") conducted a preliminary competency screening and filed a report on September 13, 2018. *See* DCDBH Psychiatric Report, ECF No. 6. The DCDBH clinical psychologist who evaluated Mr. Hensley determined that, in her medical opinion, he was not competent to stand trial. *See id.* at 3.

The parties appeared before the Court again on September 14, 2018. The United States moved again to have Mr. Hensley committed to the custody of the Attorney General for a Psychiatric Evaluation and for the Court to continue to detain Mr. Hensley. *See* Sept. 14, 2018 Min. Entry. Defense counsel objected to the 30-day commitment but did not object to the evaluation or competency hearing. *See id*. Defense counsel requested that, if the Court were to order an evaluation, Mr. Hensley be released and given the opportunity to be examined by a licensed psychiatrist or psychologist in the community. *See id.* Over defense counsel's objections, the Court ordered that Mr. Hensley be committed to the custody of the U.S. Attorney General, for a period not to exceed thirty days, to undergo a psychological examination to

4

determine his competency.  *See id.*  The Court issued an Initial Commitment Order committing

Mr. Hensley to BOP for evaluation on September 18, 2018.  *See* Order, ECF No. 7.

Also at the September 14, 2018 hearing, the Court held the United States' outstanding

motion for pretrial detention in abeyance pending the resolution of Mr. Hensley's competency

issues.  *See* Sept. 14, 2018 Min. Entry.  The United States submitted a second memorandum in

support of pretrial detention on January 16, 2019 in preparation for a detention hearing scheduled

for the next day.  *See* 2d Mem. in Supp. of Pretrial Detention ("2d Detention Mem."), ECF No.

14.  That detention hearing was not held, and the issue of pretrial detention was deferred pending

resolution of the competency issues.  *See* Jan. 17, 2019 Min. Entry.

### C. <u>Competency Evaluation Process</u>

On October 18, 2018, thirty days after the Initial Commitment Order was issued, Mr.

Hensley arrived in the Metropolitan Detention Center, Los Angeles ("MDC-LA") in California

for his thirty-day competency evaluation.  *See* Order, ECF No. 7; Status Report, ECF No. 9;

Status Report Ex. 1, ECF No. 9-1.  The United States reports that, at the time, "no closer facility

was available to conduct the evaluation."  United States Opp'n at 3.  On October 25, the MDC-

LA Warden requested fifteen additional days to conduct the competency evaluation, until

November 30, and asked that the report be due twenty-one days later, on December 21, 2018.

*See* Status Report Ex. 1.

On November 19, 2018, the Court granted the MDC-LA Warden's request for an

extension over an oral objection from defense counsel.  *See* Order, ECF No. 10; Nov. 19, 2018

Min. Entry; Nov. 19, 2018 Hearing, 11:16:04–11:17:03 (objection of defense counsel).  The

Court excluded the time between November 19, 2018 and December 21, 2018 from the Speedy

Trial Act calculation over defense counsel's objection.  *See* Nov. 19, 2018 Min. Entry; Def. Mot. at 5.

The parties appeared in this Court on December 21, 2018 for another status hearing.  *See* Dec. 21, 2018 Min. Entry.  Despite the representation in their October 25 letter and an order of the Court, personnel at MDC-LA did not file their psychiatric evaluation on December 21, 2018. It was filed one week late, on December 28, 2018.  *See* MDC-LA Psychiatric Report, ECF No. 12.  Defense counsel requested a competency and detention hearing in which Mr. Hensley would be present, and the Court set the hearing for January 17, 2019.  *See* Dec. 21, 2018 Min. Entry. The Government's motion to exclude time from any Speedy Trial Act calculation until the January 17 hearing was granted over defense counsel's objection.  *See id.*; Def. Mot. at 5.

On January 16, 2019, in preparation for the January 17 status and detention hearing, the Government filed a Memorandum in Support of Pretrial Detention.  *See* 2d Detention Mem.  The Government also filed a Status Report, indicating that Mr. Hensley had not yet been transported from MDC-LA to D.C. for the status and detention hearing.  *See* Status Report, ECF No. 15.

At the January 17, 2019 hearing, the Government moved to commit Mr. Hensley for treatment and possible restoration.  *See* Jan. 17, 2019 Min. Entry.  Its position was supported by the MDC-LA evaluation, filed on December 28, 2018, indicating that Mr. Hensley was incompetent to stand trial.  *See* MDC-LA Psychiatric Report.  Defense counsel had concerns about making representations regarding Mr. Hensley's competency without speaking to him. Jan. 17, 2019 Hearing, 11:01:10–11:02:03.  The Court continued the proceedings until January 24 and held the motion in abeyance.  *See* Jan. 17, 2019 Min. Entry.  The Government's motion to exclude time from any STA calculation until the January 24 hearing was granted over defense counsel's objection.  *See id.*; Def. Mot. at 6.  On January 24, the Court again continued the

competency hearing, as Mr. Hensley was in transit from MDC-LA to D.C.  *See* Jan. 24, 2019 Min. Entry.  The United States asserts that Mr. Hensley returned to D.C. on January 31, 2019.  *See* United States Opp'n at 4.

On February 12, 2019, 150 days after Mr. Hensley's evaluation was ordered, the parties appeared for another competency hearing.  *See* Feb. 12, 2019 Min. Entry.  The Court found Mr. Hensley incompetent to stand trial and issued an order for Mr. Hensley to be placed in the custody of the Attorney General for treatment and restoration that same day.  *See* Order, ECF No. 16.  It was not until April 16, 2019, more than two months after that order, that Mr. Hensley arrived at FMC-Butner and began to receive treatment.  *See* April 2019 FMC-Butner Letter, ECF No. 18.  The United States later explained that the delay was institutional: "There are only two facilities where male federal defendants can undergo competency restoration: FMC Butner and FCMP Springfield.  As a result, there was and still is a waitlist for restoration bed space for men."  United States Opp'n at 4.  The treatment team at FMC-Butner "calculated the evaluation period to end August 13, 2019" and intended to file an evaluation within 14 working days of August 13.  April 2019 FMC-Butner Letter.

The Court held three status hearings on April 25, May 20, and July 2, 2019 before Mr. Hensley's evaluation following treatment and restoration at FMC-Butner was complete.  *See* Apr. 25, 2019 Min. Entry; May 20, 2019 Min. Entry; July 2, 2019 Min. Entry.  On August 28, 2019, the Court docketed a timely-received psychiatric report from FMC-Butner, which provided the facility's clinicians' opinion that Mr. Hensley was still incompetent to stand trial.  *See* FMC-Butner Psychiatric Report, ECF No. 20.  Personnel at FMC-Butner were hopeful that they could restore him to competency and requested an additional 120 days for restoration.  *Id.* at 10.  On

September 6, 2019, the Court extended the restoration period for an additional 60 days.  *See* Order, ECF No. 21.

The Court received a letter from FMC-Butner on October 9, 2019, estimating that the extended evaluation period would end on November 11, 2019 and a report could be completed by December 2.  *See* Status Report, ECF No. 27; October 2019 FMC-Butner Letter, ECF No. 28. Shortly thereafter, FMC-Butner submitted a Certificate of Mr. Hensley's Restoration of Competency to Stand Trial, ECF No. 29 at 3, and the Court ordered the return of Mr. Hensley to D.C. on November 20, 2019.  *See* Order, ECF No. 30.

On December 6, 2019, Mr. Hensley appeared before the Court restored to competency and the Court ordered Mr. Hensley's release on a personal recognizance bond.  *See* Dec. 6, 2019 Min. Entry; Order, ECF No. 31.  Mr. Hensley's release occurred a total of 444 days after he was committed to BOP for evaluation and a total of 457 days after he was initially committed for a preliminary screening with DCDBH.  In all, Mr. Hensley spent approximately fifteen months in pre-trial detention across the entire evaluation and treatment period.

**D.  <u>Defendant's Motions to Dismiss</u>**

At a status hearing on November 19, 2018, Defense counsel made its first of repeated motions to dismiss for Speedy Trial Act violations.  *See* Nov. 19, 2018 Min. Entry.  This first motion was held in abeyance.  *See id*.  The motion was renewed at each of the five status hearings thereafter.  *See* Dec. 21, 2018 Min. Entry; Jan. 17, 2019 Min. Entry; Apr. 25, 2019 Min. Entry; July 2, 2019 Min. Entry; Sept. 6, 2019 Min. Entry.

At the January 17, 2019 hearing, the Court denied defense counsel's previous renewed oral motion to dismiss for Speedy Trial Act violations and explained the ruling on the record. *See* Jan. 17, 2019 Min. Entry.  Defense counsel then renewed the motion which was again

denied.  *See id.*  On April 25, defense counsel renewed the motion and it was taken under advisement, but later denied on the record on July 2.  *See* Apr. 25, 2019 Min. Entry; July 2, 2019 Min. Entry.  The Court denied those motions because the United States' motion for pretrial detention, which was pending until Mr. Hensley was restored to competency, and the competency evaluation and restoration process both tolled the Speedy Trial Act clock.  *See* July 2, 2019 Hearing, 11:40:43–11:48:37.  In so ruling, the Court acknowledged that the length of Mr. Hensley's pretrial detention might eventually raise constitutional concerns.  *Id.* at 11:48:37–11:51:45.

At the July 2, 2019 hearing, defense counsel renewed the motion to dismiss for Speedy Trial Act violations and further alleged violations of the U.S. Constitution.  *See* July 2, 2019 Min. Entry.  This motion was taken under advisement and renewed at the September 6, 2019 hearing, with additional oral motions to dismiss for violations of the U.S. Constitution for Cruel and Unusual Punishment and under Federal Rule of Criminal Procedure 48(b) for unnecessary delay.  *See* Sept. 6, 2019 Min. Entry.  The Court requested briefing from the defense and the United States.  *Id.*  The Court held a motion hearing on October 17, 2019 and took the Motion to Dismiss under advisement.  *See* Oct. 17, 2019 Min. Entry.

## LEGAL STANDARD

### A.  Constitutional Right to a Speedy Trial

Criminal defendants have a constitutional right to a speedy trial under the Sixth Amendment.  U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial.").  The constitutional right to a speedy trial is distinct from the right to a speedy trial guaranteed by the Speedy Trial Act.  *Cf. United States v. Rice*, 746 F.3d 1074, 1081 (D.C. Cir. 2014) ("Speedy Trial Act claims do not on their own preserve a constitutional

claim to a speedy trial."). Accordingly, "[t]he absence of a Speedy Trial Act violation does not ipso facto defeat a Sixth Amendment speedy trial claim." *Id.*; 18 U.S.C. § 3173 ("No provision of [the Speedy Trial Act] shall be interpreted as a bar to any claim of denial of speedy trial as required by amendment VI of the Constitution."). Courts must order "the unsatisfactorily severe remedy of dismissal of the indictment when the [speedy trial] right has been deprived." *Barker v. Wingo*, 407 U.S. 514, 522 (1972). Such a "dismissal based on a finding that the constitutional right to a speedy trial has been denied bars all further prosecution of the accused for the same offense." *Mann v. United States*, 304 F.2d 394, 397 (D.C. Cir. 1962).

**B. Federal Rule of Criminal Procedure 48(b)**

Federal Rule of Criminal Procedure Rule 48(b) may be used to dismiss a criminal case in which there has been unnecessary delay in bringing a defendant to trial. This power is distinct from the Sixth Amendment and the Speedy Trial Act and "may be invoked to protect the defendant's interest in a speedy trial even though there has not been a violation of the Sixth Amendment or the Speedy Trial Act." *United States v. Starr*, 434 F. Supp. 214, 216–17 (D.D.C. 1977); *see Mann*, 304 F.2d at 398 (describing Rule 48(b) as "a restatement of the inherent power of the court to dismiss a case for want of prosecution") (quoting Committee Note Fed. R. Crim. P. 48(b)).[4] Thus where "unnecessary delay under Rule 48 (b) is present, then the decision

---

[4] At least one judge in this District has concluded that Rule 48(b) is not a proper and suitable basis for dismissal if there has been no Speedy Trial Act violation. *See United States v. Parga-Rivas*, 689 F. Supp. 2d 25, 30 (D.D.C. 2009) ("When the Speedy Trial Act does not require dismissal, it would be imprudent to grant dismissal under Rule 48(b).") (citing *United States v. Paredes-Batista*, 140 F.3d 367, 376 (2d Cir. 1998)). The Court respectfully disagrees with this interpretation and reads the cited case, *United States v. Paredes-Batista*, to stand for the proposition that a Court may use its discretionary powers to dismiss a case under Rule 48(b) even if it determines that there has been no Speedy Trial Act violation, provided that the defendant raises it as a separate basis for dismissal, which Mr. Hensley has done here. *See* Def. Mot. at 21–22.

whether to . . . dismiss lies within the sound discretion of the trial court." *Hanrahan v. United States*, 348 F.2d 363, 368 (D.C. Cir. 1965). Nonetheless, dismissal under Rule 48(b)(3) is a significant sanction reserved for "extreme circumstances." *Parga-Rivas*, 689 F. Supp. 2d at 30 (quotation omitted).

"If appropriate, this dismissal [under Rule 48(b)] can be with prejudice." *Starr*, 434 F. Supp. at 216 (quotation omitted). However, dismissal with prejudice is best reserved for serious violations. *See United States v. Goodson*, 204 F.3d 508, 514 (4th Cir. 2000) ("The sanction of dismissal with prejudice . . . is a harsh remedy for enforcement of those powers, and, indeed, its use becomes a significant event.").

## DISCUSSION

### I.     The Delay Violates Mr. Hensley's Sixth Amendment Right To a Speedy Trial.

As noted, the Court's prior conclusion that the Speedy Trial Act was tolled due to the pending pretrial detention motion and the competency proceedings does not foreclose a finding that Mr. Hensley's constitutional right to a speedy trial was violated. It is "unusual" for a violation of a defendant's constitutional speedy trial right to exist in the absence of a violation of the statutory right to a speedy trial. *Rice*, 746 F.3d at 1081 (citations omitted). But even where, as here, the Speedy Trial Act has been tolled for an extended period, "extraordinarily lengthy delays . . . may ultimately result in prejudice to the defendant's trial rights," and those delays are "subject to analysis under the broader protections of the Sixth Amendment's speedy trial guarantee." *United States v. Beler*, No. 19-mj-00100, 2019 WL 5789747, at *14 n.14 (D.D.C. Nov. 6, 2019).

The right to a speedy trial under the Sixth Amendment cannot be "determine[d] with precision." *Barker*, 407 U.S. at 530. Inquiries into potential violations of the speedy trial clause

are fact intensive, requiring the Court to perform a "balancing test, in which the conduct of both the prosecution and the defendant are [sic] weighed." *United States v. Tchibassa*, 452 F.3d 918, 922 (D.C. Cir. 2006) (quoting *Barker*, 470 U.S. at 530) (alteration in original).  In *Barker v. Wingo*, the Supreme Court outlined four factors for courts to evaluate: 1) the length of delay; 2) the reason for the delay; 3) any assertion of the right by the defendant; and 4) prejudice to the defendant caused by the delay.  *See* 470 U.S. at 530.  "None of the four factors is either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial; rather, they are related factors and must be considered together with such other circumstances as may be relevant."  *Tchibassa*, 452 F.3d at 923 (quoting *Barker*, 470 U.S. at 533) (internal quotation marks and alterations removed).

## A.  <u>The Length Of Delay Is Presumptively Prejudicial and Weighs In Favor Of Dismissal</u>

The first *Barker* factor, the length of delay, requires a "double enquiry."  *Doggett v. U.S.*, 505 U.S. 647, 651 (1992).  The court must first answer a threshold question of whether the delay was "presumptively prejudicial" to trigger "a speedy trial analysis."  *Id.* at 651–652.  Second, if the delay is "presumptively prejudicial," the court must consider "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim."  *Id.* at 652.

Mr. Hensley's delay of fifteen months is "presumptively prejudicial."  *Id.* at 652 n.1. "Generally, a delay of one year is presumptively prejudicial."  *United States v. Bikundi*, 926 F.3d 761, 779 (D.C. Cir. 2019) (citing *Doggett*, 505 U.S. at 652 n.1).  Thus although cases involving

significantly longer delays have been deemed constitutional,[5] the fifteen-month delay here is sufficient to warrant further inquiry. *See United States v. Taylor*, 497 F.3d 673, 677 (D.C. Cir. 2007) (assuming delay of a year "sufficient to trigger the *Doggett* inquiry").

Regarding the second stage of analysis, the Supreme Court observed that "[t]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 470 U.S. at 531. That observation from *Barker* "could have been referring to this very case." *Lopesierra-Gutierrez*, 708 F.3d at 203. Mr. Hensley was charged with two simple misdemeanors for unauthorized entry onto the White House complex and grounds for which he could receive a maximum sentence of 18 months, if sentenced consecutively, with a recommended Sentencing Guidelines range of only up to six months. *See* Information; 18 U.S.C. § 1752(a)(1); 22 D.C. Code § 3302(b); *Guidelines Manual*, § 2B2.3. In *Bikundi*, the D.C. Circuit concluded that an eighteen-month delay for complex conspiracy charges carrying potential sentences of 84 and 120 months was "justifiable." *Bikundi*, 926 F.3d at 779. The same cannot be said for Mr. Hensley's simple misdemeanor charges. Given the disproportionate length of the delay relative to Mr. Hensley's potential sentence if convicted, this factor weighs in favor of dismissal.

**B. The Reason For the Delay Weighs In Favor Of Dismissal**

The second *Barker* factor asks "'whether the government or the criminal defendant is more to blame for [the] delay.'" *Rice*, 746 F.3d at 1082 (quoting *Doggett*, 505 U.S. at 651). Pretrial delay "is often both inevitable and wholly justifiable." *Doggett*, 505 U.S. at 656. That is especially true when competency proceedings are necessary, because "the criminal trial of an

---

[5] *See, e.g.*, *Bikundi*, 926 F.3d at 779 (eighteen-month delay); *United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 203 (D.C. Cir. 2013) (a three-and-a-half-year delay); *Rice*, 746 F.3d at 1081 (twenty-six month delay); *Tchibassa*, 452 F.3d at 927 (eleven-year delay).

incompetent defendant violates due process." *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996).

Thus different reasons for delay are subject to different weight in this inquiry: "[a] deliberate

attempt to delay the trial in order to hamper the defense should be weighted heavily against the

government," but "[a] more neutral reason such as negligence or overcrowded courts should be

weighted less heavily but nevertheless should be considered since the ultimate responsibility for

such circumstances must rest with the government." *Barker*, 407 U.S. at 531.   Nonetheless, the

Government must act "with reasonable diligence" in addressing a defendant's competency.

*Doggett*, 505 U.S. at 656.

> ### 1.  *The United States bears responsibility for the delays that occurred at multiple stages of the competency evaluation process.*

Mr. Hensley's evaluation and treatment process was riddled with delays.  Mr. Hensley's

initial thirty-day competency evaluation at MDC-LA in California did not begin until

approximately one month after this Court's order.  *See* Order, ECF No. 7; Status Report, ECF

No. 9.  Mr. Hensley then waited for approximately eight weeks after the end of his evaluation on

November 30 to be transported back to Washington, D.C. for a competency hearing.  *See* Status

Report Ex. 1; Jan. 24, 2019 Min. Entry.  Mr. Hensley's treatment and restoration also suffered a

delayed start—Mr. Hensley did not appear at the designated treatment center until sixty-three

days after this Court's order.  *See* Order, ECF No. 16; April 2019 FMC-Butner Letter.  In total,

Mr. Hensley spent approximately five months in transit or in limbo awaiting the next phase of

his evaluation and treatment process.

Mr. Hensley's actual competency evaluation did not proceed in a timely manner either.

Within a week of his arrival, the MDC-LA Warden requested an additional fifteen days for the

evaluation, ending November 30, and asked that the evaluation report be due on December 21.

*See* Status Report Ex. 1.  This Court granted the extension, yet the MDC-LA report was filed one

week late.  *See* Order, ECF No. 10.  Thus the Court had to delay Mr. Hensley's competency status hearing by twenty-seven days from December 21, 2018 to January 17, 2019.  *See* Order, ECF No. 10; Dec. 21, 2018 Min. Entry.  Mr. Hensley then did not depart from MDC-LA until around January 24, 2019, approximately eight weeks after his evaluation had ended.  *See* Jan. 24, 2019 Min. Entry.  So, his competency hearing was further delayed from January 17, 2019 to February 12, 2019—another twenty-six days.  *See* Status Report, ECF No. 15; Jan. 17, 2020 Min. Entry.  Mr. Hensley's competency hearing was ultimately held six weeks after the evaluation report was filed.  *See* MDC-LA Psychiatric Report, ECF No. 12; Feb. 12, 2019 Min. Entry.

The United States attributes the delays to limited availability of BOP facilities that could conduct Mr. Hensley's evaluation and treatment.  *See* United States Opp'n at 3–4.  It is true that BOP facilities are far-apart and over-subscribed, and the transportation of detainees requires significant coordination.  Thus the delays here are "a result of institutional dysfunction rather than deliberate wrongdoing or bad faith."  *United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990) (internal quotations marks omitted).  The Court does not fault the prosecution for delays resulting from circumstances outside of the prosecutors' control.  But "the ultimate responsibility for such circumstances must rest with the government."  *Barker*, 407 U.S. at 531.

### 2.  *The defense has not contributed to the delay.*

Mr. Hensley's defense counsel does not bear blame for the delay.  Defense counsel did not request Mr. Hensley's evaluation, in fact he objected to it.  *See* Sept. 14, 2019 Min. Entry; *see United States v. Abou–Kassem*, 78 F.3d 161, 167 (5th Cir. 1996) (suggesting that defendants who request evaluations of their mental state may be, at least partially, responsible for the delay). In that objection, defense counsel requested that Mr. Hensley be evaluated within the community

rather than transferred to a distant BOP facility, which is the source of the delays at issue.  *See*
Sept. 14, 2019 Min. Entry.  Then, defense counsel objected to MDC-LA's request for an
extension to complete his evaluation.  *See* Nov. 19, 2018 Hearing, 11:16:04–11:17:03.  Defense
counsel also did not challenge the results of Mr. Hensley's evaluation.  *See United States v.
Patterson*, 872 F.3d. 426, 435 (7th Cir. 2017) (finding delays attributable to Government
negligence offset by defendant's challenges to competency and treatment).

In sum, the Government did not intentionally delay Mr. Hensley's case, and cannot be
faulted for asking the Court to evaluate the competency of a defendant who appeared (and
ultimately was found to be) incompetent to stand trial.  However, the delays are ultimately the
Government's responsibility and are not offset by any action of defense counsel.  This factor
therefore weighs in favor of dismissing the claims against Mr. Hensley.

### C.  Mr. Hensley's Assertion of Speedy Trial Rights Weighs In His Favor

The third *Barker* factor, "[t]he defendant's assertion of his speedy trial right, . . . is
entitled to strong evidentiary weight in determining whether the defendant is being deprived of
the right."  *Barker*, 407 U.S. at 531–32.  The Court may consider "the frequency and force of …
objections" made under both the Speedy Trial Act and the Sixth Amendment.  *Id.* at 529
(considering objections to continuances); *see Rice*, 746 F.3d at 1082 (considering Speedy Trial
Act and Sixth Amendment claims).  This factor weighs against a defendant who "did not assert
her speedy trial rights early or often."  *Bikundi*, 926 F.3d at 780 (weighing third factor against
defendant where Speedy Trial Act raised sixteen months after arraignment).

Mr. Hensley's defense counsel raised his speedy trial rights early *and* often.  Defense
counsel first mentioned his concern that Mr. Hensley's pretrial process would be unfairly
elongated on the record before the Court on September 14, 2018, when the United States moved

to have Mr. Hensley placed in the custody of BOP for 30 days over the defense counsel's objection and proposal to have Mr. Hensley evaluated within the community.  *See* Sept. 14, 2019 Min. Entry; Sept. 14, 2019 Hearing, 11:04:30–11:04:55.  Defense counsel also routinely objected to the United States' motions to exclude time from the Speedy Trial Act clock.  *See* Nov. 19, 2018 Min. Entry; Dec. 21, 2018 Min. Entry; Jan. 17, 2019 Min. Entry.

Defense counsel formally moved to dismiss the case on Speedy Trial Act grounds orally on November 19, 2018, a total of 75 days after Mr. Hensley's arrest and initial appearance, which is just beyond the 70-day deadline for commencement of trial under the Act.  *See* Nov. 19, 2018 Min. Entry; 18 U.S.C. § 3161(c)(1).  This Court has consistently held that this factor "cuts decidedly" against defendants where they do not raise any Speedy Trial Act challenge until nearly a year or more after their arrest or arraignment.  *Rice*, 746 F.3d at 1082; *see, e.g.*, *Bikundi*, 926 F.3d at 780 (sixteen months after arraignment); *United States v. Taplet*, 776 F.3d 875, 881 (D.C. Cir. 2015) (fourteen months after arraignment); *Tchibassa*, 452 F.3d at 926 (nine months after arrest).  That is certainly not the case here.  The motion to dismiss was persistently renewed, despite abeyances and denials, at each of the five following status hearings over the following ten months.  *See* Dec. 21, 2018 Min. Entry; Jan. 17, 2019 Min. Entry; Apr. 25, 2019 Min. Entry; July 2, 2019 Min. Entry; Sept. 6, 2019 Min. Entry.

Defense counsel alleged a violation of Mr. Hensley's Sixth Amendment speedy trial rights at a July 2019 hearing, and briefed the issue in a motion.  *See* Def. Mot. at 14–15.  That distinguishes this case from *Rice*, where the defendant "never alleged a Sixth Amendment violation."  746 F.3d at 1082.

In sum, defense counsel has asserted Mr. Hensley's right to a speedy trial early, frequently, and forcefully.  Thus this factor weighs heavily in favor of dismissal.

**D.  Mr. Hensley Suffered Prejudice In The Form of Oppressive Pretrial Incarceration**

The fourth factor to be weighed is prejudice to the defendant.  While the delay here is "presumptively prejudicial," that finding "cannot alone carry a Sixth Amendment claim." *Doggett*, 505 U.S. at 655–56; *see United States v. Taylor*, No. 18-cr-00198, 2020 WL 7264070, *9 (D.D.C. 2020) ("[B]ecause he cannot demonstrate 'specific prejudice to his defense,' his fleeting invocation of 'presumptive prejudice does not tip the scales in his favor.") (quoting *Tchibassa*, 452 F.3d at 927) (internal citations removed).  In *Barker*, the Supreme Court identified three forms of prejudice to consider: "oppressive pretrial incarceration"; "anxiety and concern of the accused"; and, the most serious, "the possibility that the defense will be impaired."  407 U.S. at 352.

Beginning with the third and most serious prejudice, the Court recognizes that the United States could not prosecute Mr. Hensley until he regained his competency.  From that perspective, any prejudice to his defense introduced by the delay is inherent and has not impaired Mr. Hensley's defense in any specific manner.  *See Taylor*, 2020 WL 7264070 at *9.

But, Mr. Hensley lost his liberty to "oppressive pretrial incarceration" for fifteen months. *Barker*, 407 U.S. at 352.  The Court recognizes that pretrial detention is "both inevitable and wholly justifiable" where a defendant's competency is at issue.  *Doggett*, 505 U.S. at 656. However, the pretrial detention here greatly outweighed the likely sentence if Mr. Hensley had stood trial and been convicted.  His most serious offense carried only a one-year maximum sentence, and the other charge carried a six-month maximum.  Even if the Court had tripled the guidelines recommendation and sentenced Mr. Hensley to the maximum, to be served consecutively, it could only have detained him for an additional three months.  Furthermore, approximately five months of Mr. Hensley's pretrial incarceration was spent awaiting facility availability and in transit to and from facilities, during which he was not subject to evaluation or

18

treatment for his competency.  *See supra* Section I.B.1.  Therefore, Mr. Hensley suffered

prejudice sufficient to tilt this factor in favor of dismissal.

On balance, the *Barker* factors decidedly weigh in favor of finding a constitutional

violation and dismissing the charges.  The Court therefore finds that the pretrial delay here

violates Mr. Hensley's constitutional right to a speedy trial.  Violations of the constitutional right

to a speedy trial are rare, and most appeals on such grounds have been denied despite involving

longer delays than presented here.  But Mr. Hensley's alleged crime does not rise to the level of

those in cases where longer delays have been upheld, and is neither justifiable nor tolerable in

this context.  Such a constitutional violation demands dismissal with prejudice.  *See Mann*, 304

F.3d at 397.

## II.      Dismissal For Unnecessary Delay Is Proper Under Rule 48(B)

Federal Rule of Criminal Procedure 48(b) provides a separate and alternative ground for

dismissal due to the "unnecessary delay" borne by Mr. Hensley pretrial.  The Rule 48(b) inquiry

is a fact-intensive balancing test that considers "most of the same factors which are relevant for

Sixth Amendment purposes." *Starr*, 434 F. Supp. at 217 (quoting *United States v. Crow Dog*,

532 F.2d 1182, 1194 (8th Cir. 1976)).  "[K]ey factors are the length of the delay, the reason

therefor, diligence of the defendant, and the possibility of prejudice to him." *Id.*  The Court

considers these factors to determine whether the delay was "arbitrary, purposeful, oppressive, or

vexatious." *Mathies v. United States*, 374 F.2d 312, 315 (D.C. Cir. 1967).

### A.  <u>Mr. Hensley Suffered Lengthy, Unnecessary Delays During the Competency Proceedings</u>

As discussed above, unnecessary delays plagued Mr. Hensley's evaluation and treatment

process.  The Court takes no issue with the time actually used to evaluate and restore Mr.

Hensley's competency; that is not an 'unnecessary' delay.  *See United States v. Cartano*, 420

F.2d 362, 364 (1st Cir. 1970) ("The interval used to obtain a psychiatric examination of defendant was clearly necessary to the proper discharge of the court's duties in this case."). Instead, the problems arise from the delays in transporting Mr. Hensley to and from the relevant facility and securing a bed for him.  Mr. Hensley's initial thirty-day competency evaluation did not begin until well over a month after this Court's order as he had to travel to MDC-LA in California and await an available bed.  *See* Order, ECF No. 7; Status Report, ECF No. 9.  This evaluation ran long, and MDC-LA filed its evaluation report one week later than ordered.  *See* Order, ECF No. 10; MDC-LA Psychiatric Report.  Mr. Hensley then waited for approximately eight weeks to be transported back to Washington, D.C. for a competency hearing.  *See* Status Report Ex. 1; Jan. 24, 2019 Min. Entry.  Finally, Mr. Hensley did not arrive at the treatment facility until sixty-three days after this Court's order.  *See* Order, ECF No. 16; April 2019 FMC-Butner Letter.  Mr. Hensley spent approximately five months awaiting facility availability and in transit to and from federal facilities.

If the Government charges a defendant who may need competency evaluation and restoration, it bears the responsibility to ensure that he is promptly evaluated and, if necessary, promptly brought to a facility for treatment.  Insufficient bed space or a lack of personnel may justify a short delay, but should not cause a defendant to be held for a period that exceeds his likely sentence if convicted.[6]  When viewed separately, the delays do not appear egregious.  But

---

[6] Pursuing charges in D.C. Superior Court may have shortened the delays, as local facilities might have been able to evaluate and restore Mr. Hensley's competency more expeditiously, without the need to transport him across the country and back.  *See Beler*, 2019 WL 5789747 at *12 n.12 ("Pursuing criminal charges against an incompetent defendant in federal court may . . . be in service of public safety . . . but also potentially transfers long-term care for the defendant from local to federal authorities.").

collectively, they are oppressive and out of proportion to the misdemeanor charges Mr. Hensley faced.

In sum, the delays are not attributable to bad faith or ill will, nor was the process of evaluating and treating Mr. Hensley itself unreasonable.  Some delay was unavoidable because the Government cannot prosecute an individual deemed incompetent to stand trial.  However, the delays identified here were excessive and fundamentally unjust.

**B.  <u>Mr. Hensley's Diligence and the Prejudice He Suffered Favor Rule 48(b) Dismissal</u>**

Courts also weigh the "the diligence of the defendant, and the possibility of prejudice to him" in the Rule 48(b) inquiry.  *Starr*, 434 F. Supp. at 217.  As discussed, Mr. Hensley's defense counsel routinely raised concerns about the delay in Mr. Hensley's proceedings by raising his speedy trial rights early and often.  *See supra* Section I.C.  Defense counsel also advocated for local evaluation and treatment, which might have reduced the unnecessary delays caused by the distance and capacity of the federal facilities.  *See* Sept. 14, 2019 Min. Entry.

"[P]rejudice may be spelled out from restraint on liberty for an unreasonable period of time before trial."  *Mathies*, 374 F.2d at 315.  Mr. Hensley has been imprisoned for a total of fifteen months, five of which this Court has found unnecessary, for misdemeanor offenses.  This excessive period of incarceration prejudiced Mr. Hensley.

In sum, Mr. Hensley's case presents "extreme circumstances" that warrant a discretionary dismissal under Rule 48(b).  Mr. Hensley was detained for over a year on two misdemeanor charges, largely due to structural deficiencies in the federal competency evaluation and restoration process.

**C.** **<u>Dismissal With Prejudice Is Warranted</u>**

Generally, Rule 48(b) dismissals should be without prejudice unless the delay "caused prejudice to the defendant or a substantial threat thereof." *Goodson*, 204 F.3d at 514.  The Court has determined that the delays present here substantially prejudiced Mr. Hensley.  *See supra* Section I.D.  The delay caused Mr. Hensley to suffer "oppressive incarceration prior to trial," *Goodson*, 204 F. 3d at 515, and violated his Sixth Amendment rights.

 "[D]ismissal with prejudice always sends a stronger message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays." *United States v. Ferguson*, 565 F. Supp. 2d 32, 47–48 (D.D.C. 2008), *dismissed*, 2008 WL 3198878 (D.C. Cir. July 17, 2008) (quoting *Taylor*, 487 U.S. at 340).  Significant inefficiencies in the competency process led to unnecessary pretrial delays and prolonged Mr. Hensley's pretrial detention.  The Court therefore finds that the circumstances of this case are extreme and dismissal with prejudice under Rule 48(b) is warranted.

## CONCLUSION

For the reasons explained above, the case against Michael Costello Hensley is DISMISSED WITH PREJUDICE as of March 5, 2020.

## REVIEW BY THE CHIEF JUDGE

The parties are advised that under the provisions of Local Criminal Rule 58 and Federal Rule of Criminal Procedure 58(b), any party may appeal an order by a magistrate judge in a criminal misdemeanor matter to a district judge within 14 days of the party's receipt of the order.  Local Criminal Rule 59.3 further provides that requests for review of magistrate judge orders in cases that are not assigned to a district judge should go to the Chief Judge of this Court.  The Court previously ordered that the deadline for seeking review of the dismissal would be stayed pending

issuance of this Memorandum Opinion; thus the 14-day period to seek review by the Chief Judge

commences on the date of this Opinion.  The request for review must specifically designate the

part of the order for which review is requested and the bases for such review.  The filing of

oppositions and replies must comply with Local Criminal Rules 47(b) and (d).


Date: August 5, 2024

                                          _____

                                          ROBIN M. MERIWEATHER
                                          UNITED STATES MAGISTRATE JUDGE